The next case is No. 20-1196, Ziparo v. CSX Transportation. We'll hear from the appellant, Mr. Darby. Yes, Your Honor. Good morning. May it please the Court, my name is Matt Darby, and I represent Cody Ziparo, who is the appellant in this matter. And as the Court is aware, this case involves the interpretation of a term in the Federal Rail Safety Act at 49 U.S.C. 201-09, which was really landmark legislation in the railroad industry that established a remedy for railroad workers who, among other things, report unsafe conditions. And as all the courts that have interpreted this statute since its passing in 2007 have all recognized that this is a remedial statute that should be interpreted in a way that is favorable to the plaintiff to effectuate that remedial purpose, which I would submit Congress found to be very important. I would suggest that the type of activity that took place in this particular case, namely the falsification of records that led to a lack of instantaneous knowledge about the location of railroad cars, is the type of action that Congress would find to be encompassing. What was the safety hazard that it caused?  The first is the actual hazard where the location of these cars would be unknown by the crew members who would be reporting to work. So, for example, the records may show that a car was, in fact, at a customer's location when it was in reality in the yard. And so I don't know if you've had the opportunity to be in a rail yard or look at one, but they're basically, you know, a series of parallel tracks and there's a lot of movement of cars around those tracks. And so, for example, if there's a derailment and it potentially involves a hazardous material, the records from CSX are going to show that that car may be at a customer's location and not in the rail yard. And that rail yard may be the next- Excuse me, Mr. Darby. This is Judge Lynch. Did Mr. Zaporo say anything to anyone at CSX that relied on nobody's going to know where the cars are, let alone has met cars specifically? Was that something that he raised as a concern about this falsification issue? I think, Your Honor, that the reason that the summary judgment was inappropriate in this case is I think a jury could reasonably interpret his statements to that end. And so, for example, he said that you guys are, at one point, you guys are creating an unsafe environment. And that's the record at 567 and 68. And also, that was confirmed by his engineer, Mr. Bogula, who confirmed that Mr. Zaporo had spoken to Lacey, who was one of the two bad actors that, you know, there's no dispute was ordering that these records be falsified. And that's leading into the first theory, right, that, you know, that the reports were creating stress and that was distracting and creating a dangerous hazard. But there was nothing about the has met and locations of cars in the initial report, right? Well, there wasn't specifically, Your Honor. But I think it gets into the idea, you know, there is obviously the underlying issue here of the district court's interpretation of the 49 U.S.C. 2109B1A, which says, you know, the report has to be made in good faith and whether that includes an objective component. However, I think that it has to be analyzed, you know, I think objective evidence of, you know, what the reasonable railroader would interpret can be also relevant to the issue of a subjective belief. So, for example, if a reasonable railroader would conclude that, yes, it is unsafe for us not to know where cars are. And if I just report, I don't know where cars are. It might be the same as an air traffic controller saying, I don't know where that, you know, what airplane is parked at this particular gate. Is there any other? Go ahead, sir. Well, I was just going to suggest, Mr. Darby, I mean, I don't know that you need to hype just how dangerous it is and invoke the hazmats and everything else. Isn't your principal argument that as a matter of law, all that's necessary is that Mr. Darby believed that there was a safety problem? And what he said to his supervisors was, I believe there is a safety problem because the pressure to create these false reports is distracting the employees and making them all nervous. Now, that may or may not be an objectively reasonable thing. But if you're right on the law, isn't that good enough? Unless there's some reason to think that he never believed this and was just making it up to get Lacey in trouble or something. Why wouldn't that be sufficient if you're right on the law? I agree, Your Honor, that if the objective standard isn't a requirement of B1A, and I believe it is not, as for the reasons set forth in the brief, that it would be plenty. I mean, I think that when you look at, for example, A1, which is the section of the law that talks about an employee cooperating with authorities and whether there's a regulatory violation and things like that, it makes sense to create an objective standard. And the Congress used the word reasonably, which we all learned at first day of torts, the reasonable person test is an objective standard, right? And in B1B, which is the refusal to work section, the Court uses the word, excuse me, the Congress uses the word reasonable in both 2A and 2B. And so it's certainly understandable that in cases interpreting those two sections of the FRSA whistleblower provisions that the objective standard is applied. But you have one minute left. Oh, thank you. In B1A- Subjective belief is enough and there's no reasonableness requirement for the conduct? Yeah, there is. And Your Honor, the case doesn't come to mind by name, but I know we did reference one in our brief. I think it was the one that deals with securities, the name escapes me. But I think part of the Congress's intent here is that we're talking about safety complaints coming from people with boots on the ground. These are the folks that are hustling the cars, switching the cars, climbing the cars, doing all those things. And to require them to have an objective- I guess my concern, counsel, is that a safety complaint sounds like it's about a safety issue or a hazardous condition. And the complaint here seems to be indirect. It was about something that caused stress or worry that made his job functions then unreliable or more risky somehow. And that extra step then seems to introduce- I mean, it could be anything. Your vacation policy is causing me stress and the way I'm doing my job is now dangerous. I mean, where's the limit? And I think, Your Honor, that we have to look at the totality of the circumstances here. So, in other words, yes, obviously, the courts have found that things like that that are not within the immediate supervisor's control should not be. I can't go on vacation. I'm stressed. However, this is about the day- I am now being asked, as I look at a railroad car and write down the number- and that's what these folks do. They write down the number. I'm being asked to write down the number and reflect that this car is not where it is. It goes to the heart of what they do on a day-to-day basis. And that's where I think the issue is different, in addition to the fact that it is, in fact, in our opinion, a safety issue for purposes of, you know, if I believe cars are at a customer's in the yard and track eight in my records are shown to not have any cars on it, and I shove into that track, that's a danger. But that is a different issue or argument than the stress argument. It is. But I think that stress can be subjectively- Well, but the stress- isn't the stress caused, Mr. Darby? This is his argument anyway. The stress is caused by misconduct of people who are under the employer's control. And indeed, they acted on this complaint at the end of the day, right? They disciplined the people who were causing the problem, whether it's a safety problem or an ethics problem or a customer relations problem or however it's characterized. The employer had the ability to control it, and they did. Absolutely, Your Honor. And it would be like me saying my boss is requiring me to report the clients that cases are settled when they're not. I mean- I mean, look, Mr. Darby, I mean, all of this, it's interesting because maybe at the end of the day you're going to have a difficult time proving causation. Because it seems a little odd for an employer to receive a complaint like this, act on it to fix the problem, and then fire the guy who brought it to their attention because he complained. That seems rather strange. But that's a different issue. Really, all the employer has to do in light of this statute, if we interpret it your way, is just not fire the guy because he made the complaint. Whether he's right, whether he's wrong. If they thought it wasn't a safety issue, if they thought that the supervisors were doing the right thing, they didn't have to say so. Say, sorry, goodbye, thanks for your complaint, and get back to work. And then don't make a stupid mistake and cause a crash. But that's where your problem is with this case, it seems to me. That's not the issue that's before us. Right, and I think, Your Honor, the reason it's- Well, I don't know if I agree on the causation, but I don't want to have that used against me in case we're back here again. Oh, no, you don't have to. You disagree with the view that you have a problem with causation, that's fine. All I'm saying is that what you have here is your best argument, it seems to me, is maybe no other statute in the universe says only good faith and not reasonable. That's all the more reason to say, because this one does, apparently Congress meant something different in this one than in all the other ones. That's right, and the purpose of the statute is, I would think the Congress would rather have people err on the side of reporting, and it be investigated, and it not be a safety issue, than to report something and have the risk of retaliation if, in fact, that occurred. And so what's the harm in somebody reporting an unsafe condition in good faith that turns out not to be unsafe? There's no harm, unless they retaliate. And that's the question for another day, assuming that the court would be persuaded to remand the case and reverse the district court's decision. So I'm sure my time is up, and so I shall- I did save two minutes for rebuttal, so. Thank you, Mr. Elry. We'll hear from the FLE. Mr. Devine? Yes, thank you. It pleases the court. The key here is the protected activity, as the questions have indicated. And that means you have to have a good faith report. There has to be a condition. It can't be any kind of condition. It has to be a safety condition. And then it can't be any safety condition. It has to be a hazardous safety condition. And opposing counsel in his presentation talked about reporting unsafe conditions or safety or touching on safety in the brief and things of that nature. But the key phrase there is hazardous. So here, the report, we don't have to guess about, we don't have to read into, because the report itself is in the record. The ethics complaint, he availed himself of the ethics hotline, made an ethics complaint. And as a result, we know why in his subjective mind he thought there was a safety problem, because he provided the because. He provided the why. Well, see, before we go further, Mr. Devine, didn't you just say we know why he thought it was a safety problem? Yeah, well, he said in words that this is a safety issue because... So, excuse me, if he thought it was a safety issue, maybe he's wrong. I mean, maybe it's not a safety issue. I'm not sure it's a safety issue. That's fine. If I disagree with him or if the employer disagrees with him that it's a safety condition, that's fine. But doesn't the statute ask only whether he in good faith believed it was a hazardous condition? But it has to be a hazardous safety condition and that the... In good faith, a hazardous condition. If it said, if he reports what he reasonably and in good faith believes is a hazardous condition, that would be something else. You'd be in a position to say no reasonable person would think this is a safety condition. But if he says to the employer, I think this is a safety condition. Now, I guess you'd have a factual issue as to whether he really believes that or he's in good faith believe it. But if he comes to the employer and says, I think there's a safety condition here. What in the statute says that if he is in good faith in believing that what he's saying is a safety condition, there could be retaliation against him? Because it can't be that broad. If the employee said that he believed that there was... Every time there's 13 cars in a train, it's unsafe. That's just not... There has to be some... You can fire... Excuse me. You're saying that it would be like the world would come to an end. It would be terrible if the employer wasn't allowed to fire him for thinking that? Yes. What's the problem? Why do you say that's ridiculous? It might be a ridiculous complaint that he makes, but the statute doesn't say that the employer, the railroad has to act on every crazy thing that somebody brings to them. It says they're not allowed to fire someone who in good faith says this is a safety condition. But every job on the railroad, they could say was a stressor. That if my boss told me to work faster, or if my boss told me that I had to comply with the rules and regs, it would be stressful. Right. And so, excuse me, and so, excuse me, if somebody comes in and says that, the employer says, get out of here, go back to work. And if he then refuses to comply with what he's been asked to do now, we're in a completely different section, where he's only protected if he reasonably believed that there was a safety problem. And so, if he's just being idiosyncratic or obnoxious or whatever, and refuses to work, Congress says it's only protected if a reasonable person would conclude that it was hazardous. But there's- All he does is- Yeah, go on. I'm sorry. Go ahead. No, I'm sorry. I'm sorry, Your Honor. But there's a lot between refusing to work and what's going on. So, just to play out your hypothesis, he comes in and says that, or says to his boss, no, I don't have to work any faster, because I believe that it caused me stress and preoccupation. So, we discipline him, not for refusing to work, but for not working at the correct speed. Well, if you do that, that's another whole problem. That's the causation issue. I mean, in this case, your position is, quite reasonably, it seems to me, that you fired him because he caused a serious safety condition. And that's the factual defense. But what you're saying here, as a matter of law, is that you would legally be allowed to fire him because he came into the office and gave this report and called it a safety condition. And you would be allowed to retaliate against him for that, even if he, in good faith, albeit weirdly, believed that this was a safety condition. I'm trying to figure out why it should be the law that you would be allowed to fire him for that reason. And if I could just follow up and put a little finer point on that, what is your basis for including a reasonableness requirement in the statutory language? It just says good faith, and it sounds like you want to add reasonable. And where does that come from? Um, there has to be... The good faith cannot be purely subjective. If... Why not? Well, the recent Tompkins case from December of this year, when it found an objective standard, it cited in its footnotes two cases, including those where there is no named reasonableness standard. Well, wait, it may have cited cases like that, but what was before the court in Tompkins was a statute that had the word reasonable in it, right? Correct. That doesn't help you. Excuse me, that doesn't help you answer Judge Park's question. The question is, where does reasonableness come from? I would have thought that usually in law, and even Black's Dictionary thinks this, good faith is usually, there may be exceptions, usually the very marker for a subjective standard, while reasonable belief is usually the marker for an objective standard. So why do you think that Congress used the words in some different way here, particularly given that in the very next section, it uses the word reasonable? Multiple times, and in the section immediately before, it uses the word reasonable. Why would it choose the words good faith rather than to mean what they use different language to mean immediately before and after? Well, because when you look at the way the statute is, as you've identified, the second piece includes refusal. And in a refusal situation, you have work that's not being done, right? So you have more harm towards the employer's interest. Work is not getting done. So there are higher standards in that situation. But if every stressor in someone's life is protected activity under the FRSA, the statute is impossibly broad and impossibly too strong to manage people. And the fact of the matter is, you know, what he reported, you know, wasn't hazardous. So it's not just reporting. Let me ask you a question, just because you use the word, we seem to have throughout been using the word hazardous and unsafe as synonyms. Is there any room between the two of them? Yes, I think, you know, hazardous, again, if you just look at the dictionary, hazardous has to have a danger component. Physical element, you mean? Yes, yes. And so when you're simply saying, I'm feeling stressed and preoccupied at work, that's not hazardous under the statute. That might be a safety concern, but it's not a qualified hazardous safety concern. If someone came into the office and said, hey, look, I think that the switch on track nine is rusty, okay, that is a hazard. A garden variety stress, like we all have in everyday life, you know, this conversation I'm having with your honors is not hazardous, okay, it might be stressful. But is it unsafe? Right, right. Yeah, well, it's not unsafe on the phone, I guess, if we were in person. But regardless, I digress and I apologize to the court. But the fact is, it has to be a hazardous safety condition. So when we're focused on, you know, just because he used the word, my safety concern is this. We would say that the being preoccupied or having normal workplace stress is not hazardous under the statute as a matter of law. I did not keep track of my time, but your honors, the... You're about done, so why don't you wind it up? Okay, well, thank you, your honors, and I appreciate your time. But at the end of the day, it has to be hazardous. And if it's not, it's not protected under the FRSA and the U.S. District Court was correct to grant summary judgment. Thank you. Thank you, counsel. Mr. Darby, you've got two minutes for rebuttal. Thank you, your honor. The question, you know, and I think in the court's questions, and when we talk about the issue of subjectivity, and I think the court has recognized, and rightly so, that Congress had every opportunity to mirror the requirement of reasonableness that it's found in two other sections and mirror that in the reporting section. And I think, you know, that although we have focused a lot on the issue of subjectivity in terms of how Mr. Zapparo feels, the record also has an indication of other employees and how they felt about it, too. Pegula and Milner, excuse me, both talked about the idea that, you know, it's not only the stress of being required to falsify something. Again, this is something that's done on a daily basis. It would be like a defense lawyer every day falsifying billing records. Of course that's going to impact his ability to be an effective lawyer. I don't think we need to, you know, be railroaders to understand that. But there are also these fellows and men and women who are out there working who are the ones that are running around trying to figure out where these cars are, sometimes in the night, worrying about close clearance, worrying about whether a track is really clear or not. So there is a real safety issue here in terms of physical well-being as well, both the physical risk created by the stress and the inability to focus on this very safety-sensitive and dangerous job, plus the reality of the inaccurate and not even inaccurate, falsified records intentionally falsified records as to where these cars are. And those records are relied on by the conductors of the record as the record in this case shows. So with that, I will submit and thank the court for their time. Thank you both. We'll take the matter under advisement.